## John A. Boykin et al. *v.* W. O'Hara.

A power of attorney given by the owner of a plantation to an agent, setting forth that any arrangement or agreement made by the agent for the purpose of better securing any debt or debts already contracted and now held against the said property shall be considered binding against it, does not authorize the agent to confess a judgment against the principal.

APPEAL from the District Court of Terrebonne, *Randall*, J. *Winchester Hall*, for plaintiffs. *J. C.* and *A. Beatty*, for defendant. The judgment of the court was pronounced by

SLIDELL, J. The appeal in this case is devolutive. It was granted upon motion in open court, and, by consent of parties, made returnable on the first Monday of January, 1851. The transcript was filed on the 20th of January, 1851; and on the 25th of January, an application was made in writing by *O'Hara* for the dismissal of the appeal. The first ground of the application is, that *Lang* and *Lisette* are not legally before this court, because no appeal bond in their favor was given by the appellant. *Lang* was the surety on the injunction bond, and was condemned, *in solido*, with *Boykin*, plaintiff in injunction, to pay damages to *O'Hara*. *Lisette* was the sheriff who made the seizure under *fieri . facias*, which gave rise to the injunction; he was sued as a co-defendant with *O'Hara*, and damages were claimed from him personally for having made an unlawful seizure.

*Lang*, who must be considered as one of the parties who consented to the order of appeal, has waived any objection to the sufficiency of the appeal bond, by appearing in this court. If we consider *Lisette* as not before us, so far as he is individually concerned touching the claim for damages, still his absence does not prevent a review of the judgment of the district court as between *Boykin* and *O'Hara*. The objection, that the court below did not fix the amount of the bond for a devolutive appeal, is unsupported by the record. The amount of the bond was fixed in the consent order for a devolutive appeal. The remaining objections to the sufficiency of the surety on the appeal bond comes too late. See *O'Reilly* v. *McLeod*, 2d Ann. 138.

The facts material in the consideration of the merits of this case are as follows : *John A. Boykin* and *Edward M. Boykin*, residents of South Carolina, had a sugar plantation in this State. In December, 1848, *Boyken* gave *O'Hara* a draft, payable in the ensuing January, on *Fellowes* and *Johnson*, merchants at New Orleans, for $556 80, for mason work done on the plantation by him. On the 9th February, 1849, *John A.* and *Edward M. Boykin* executed in South Carolina a power of attorney of the following tenor: "Know all men by these presents, that we the undersigned, *John A. Boykin* and *Edward M. Boykin*, have nominated, constituted and appointed, and by these presents do nominate, constitute and appoint *Duncan McRea Lang*, of Bayou Black, parish of Terrebonne, in the State of Louisiana, our true and lawful attorney; and that the said *Duncan McRea Lang* is fully authorized and empowered to perform all such acts as may be necessary for the proper management of the plantation and negroes of the said *John A.* and *Edward M. Boykin*, situate and being upon the Bayou Black, parish of Terrebonne, in the State of Louisiana; and we, the

undersigned, do fully authorize the said *Duncan McRea Lang* to perform any act necessary for the well being and security of the said property, to wit, to contract any debts necessary for the support and use of the said plantation and negroes, and to draw drafts for any such necessary purposes, payable at such time and place as may seem most expedient to him, and to pay any such debts, and to meet any such draft, from any proceeds of said plantation as may be at any time in his hands; and the undersigned do hold themselves bound by such act, as though they themselves had made it: hereby authorizing and approving any such act upon the part of the said *Duncan McRea Lang*, and any arrangement or agreement made by the said *Duncan McRea Lang* for the purpose of better securing any debt or debts already contracted, and now held against the said property for any such necessary purpose, shall be considered binding against it: hereby ratifying and confirming all our said attorney may do in pursuance of these premises. In witness whereof we have hereunto set our hands and affixed our seals this ninth of February, eighteen hundred and forty-nine.

(Signed) [L. S.] JOHN A. BOYKIN. EDWARD M. BOYKIN.
Signed, sealed and delivered in the presence of
(Signed) EDWARD B. LANG. B. H. MATHESON."

In March, 1849, *O'Hara* brought suit against *John A. Boykin* upon this draft which had been protested for non-payment. Service of citation was acknowledged by *Duncan Lang* as his agent; and in the succeeding April, judgment was rendered against *Boykin* upon a confession by *Lang*, acting as agent under the power above mentioned. Upon this judgment a *fieri facias* was issued; and in December, 1849, a seizure was made of certain sugar and molasses, the product of the *Boykin* plantation; whereupon, *Boykin* brought an action to annul the judgment, and also obtained an injunction.

It is quite clear, that in the earlier portion of the instrument there is nothing which would in any degree sanction a confession of judgment. We must look for the authority, if conferred at all, in the closing clause of the power, in which the principals say, " any arrangement or agreement made by the said *Duncan McRea Lang* for the purpose of better securing any debt or debts already contracted, and now held against the said property for any such necessary purpose, shall be considered binding against it." It is not very clear that the constituents intended more than to sanction agreements for security already made. But supposing the authorization to be prospective, the largest sense which the words will permit is, a power to secure debts by means of it on the plantation.

But the act done goes far beyond a mere mortgage of the plantation. A confession of judgment involves consequences of a much graver character. It puts in the hands of the judgment creditor the immediate means of obtaining a judicial mortgage of all the lands and slaves of the defendant in the judgment, and of effecting a judicial sale of all his property, real and personal. It is substantially, in view of its consequences, one of the highest acts of ownership known to the law, and is not to be implied from the delegation of a power to create a conventional mortgage, even supposing the latter power to be clearly conferred by the instrument. It is a familiar doctrine, that all written powers of attorney receive a strict interpretation, and the authority is never extended beyond what is given in terms or is clearly necessary for carrying the authority so given into effect. This rule, if not embodied expressly in the provisions of our Civil Code, is readily deducible from their spirit. It is impossible to deny that *Boykin*, who now has a judicial mortgage recorded against all his land and slaves, and a writ of *fieri facias* levied upon his personal property, is placed in a much more

onerous position than if a specific portion of his real estate only were incumbered by a conventional mortgage. See *Fuselier* v. *Robin*, 4th Ann. 61, *Barnes* v. *Profilet*, 5 Ann. 117. Civil Code, arts. 2965, 2966, *et seq.*

BOYKIN<br>v.<br>O'HARA.

It is therefore decreed, that the judgment of the district court, except so far only as it is in favor of *Lisette* in his individual capacity, be reversed; that the judgment rendered on the 19th April, 1849, in favor of the said *O'Hara* against the said *Boykin*, in the suit entitled *W. O'Hara'v. John A. Boykin*, be annulled; that the injunction issued in this cause be perpetuated; and that the said *O'Hara* pay the costs of this suit in both courts.